**Harold S. CROSS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 20572.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 17, 1967.

Decided Jan. 9, 1968.

5. Letter from Dr. Cameron to Chief Judge Curran, June 6, 1967.

Mr. Pierre J. LaForce, Washington, D. C. (appointed by this court) for appellant.

Mr. Arthur L. Burnett, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and William H. Collins, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON and FAHY, Senior Circuit Judges, and McGOWAN, Circuit Judge.

McGOWAN, Circuit Judge:

This appeal from a conviction of housebreaking and assault with a dangerous weapon was before this court earlier in Cross v. United States, 122 U.S.App. D.C. 380, 354 F.2d 512 (1965). At that time we ruled against certain of appellant's claims of error, but we acceded to the Government's request, made by oral motion at the beginning of argument, that the case be remanded to the District Court for reconsideration by it, in the light of our supervening opinion in Whalem v. United States, 120 U.S.App. D.C. 331, 346 F.2d 812 (1965), of its failure to raise, *sua sponte* and over appellant's objection, the defense of insanity. The District Court had then expressed itself as of the view, in which appellant's counsel concurred, that it had no discretionary power to interpose the defense without appellant's consent. See Lynch v. Overholser, 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962). In *Whalem* we said that such a discretion does in fact exist; and in this case we thought it "appropriate, therefore, for the Government to propose, and for us to order, a remand in order that the trial court may reexamine, in the consciousness of a discretionary power to act as it sees fit, the representations made to it at the trial by appellant's counsel as to the insanity defense."

Those representations made at the trial in October, 1964, of offenses alleged to have occurred on February 16, 1964, rested heavily upon the fact that, on April 9, 1964, appellant had been found not guilty by reason of insanity of an

assault upon a police officer on May 3, 1962.[1] The testimony suggesting insanity was founded upon a diagnosis made in July, 1963, but it included an opinion that by October, 1963, appellant was no longer psychotic or in need of treatment. In any event, within a month of the time the jury returned its verdict, which resulted in automatic commitment to St. Elizabeths, appellant was found by that institution to be free of mental disorder and was certified for release, which was ordered by the District Court on June 15, 1964.

The other principal representation at trial was that a private psychiatrist, Dr. Lofft, had diagnosed appellant as a sociopathic personality. Counsel for appellant represented further, however, that Dr. Lofft had found appellant not to be psychotic, and fully competent to make a decision as to whether to assert the insanity defense. The court then inquired directly of appellant as to his wishes in the matter of pleading insanity, and was informed by appellant that he did not want that defense made.

When the matter first came on for hearing after our remand, a continuance proved to be necessary because appellant was in a fugitive status. During the brief hearing at that time, however, the court indicated that it would consider the issue only in the light of the record as it existed at the time when the court did not interpose the defense at trial as against appellant's objection. Counsel argued that this gave the remand too narrow a scope, and suggested expressly that the court should now do three things that it allegedly would have done earlier had it assumed a discretion on its part. These were (1) to find out what Dr. Lofft would have said about productivity, (2) to inquire in detail into the reasoning of the St. Elizabeths doctors, and (3) to pursue further the court's colloquy with appellant.

■ When the remand hearing could finally be held, the court said that it would accept and consider the proffered testimony by Dr. Lofft that the crime was the product of appellant's mental condition. On the second point, appellant's counsel asked the court to call for and to examine the records of St. Elizabeths. Although the court expressed doubts as to the significance of these records and their relevance to the remand, it at length directed counsel to submit the records as an exhibit, and said that it would consider them.[2]

---

1. This case, Cr. No. 497–62, was a re-trial after reversal of an earlier conviction. In Cr. No. 470–62, an initial conviction for robbery was also reversed, but a re-trial on March 8, 1965, resulted in a second conviction which has become final after affirmance by this court on November 2, 1965, in Cross v. United States, 122 U.S.App.D.C. 283, 353 F.2d 454 (1965). As remarked by the District Court here on remand, no insanity issue of any kind was raised in this latter case although, after the first conviction, appellant was admitted to St. Elizabeths on April 29, 1963, on recommendation of the Legal Psychiatric Service. On October 24, 1963, he was transferred back to jail on a finding by St. Elizabeths that he required no further care or treatment.

2. Appellant's counsel, who had personally examined all the records at St. Elizabeths, complained that the records produced in court did not include a correspondence file which counsel had examined in the course of his investigations at St. Elizabeths. When queried by the court as to why the file was significant, counsel referred to certain notes he had made at the time of his examination of the correspondence file. As an example of what these notes contained, counsel described and summarized the information contained in a medical report which he regarded as supporting his position. The court stated that it would consider this information, but it declined to delay the proceedings further in order that the correspondence file itself be sent for. Counsel urged that his notes were not complete, but he did characterize them as "some notes [we made] on some of the things which we felt should be looked at. * * *" Other than the medical report just referred to, counsel did not bring to the court's attention any other matters contained in the file. Under the circumstances we do not believe that the court committed reversible error in denying the request that the proceeding be continued pending the receipt of the correspondence file.

The court did not address further inquiries to appellant himself, but recited on the record impressions based on personal observation of appellant throughout the trial which suggested mental capacity and alertness on appellant's part.

After hearing argument, the matter was taken under advisement. Three days later the court issued an opinion to the effect that it would not have injected the insanity defense against appellant's will even if it had had the benefit of *Whalem* at the time that determination was made. In the course of this opinion the court alluded, among other things, to the facts that (1) it had, prior to the first decision, examined the records in Cr. No. 497–62, and had also observed appellant in two pre-trial matters, (2) St. Elizabeths on May 27, 1964, had reported that appellant was not suffering from a mental disease on February 16, 1964, and (3) on June 12, 1964, appellant had been released from a 301 (d) commitment on certification by St. Elizabeths that he was sane.

■ We conclude from all this that the purpose of our remand has been served. That purpose was to give the trial judge an opportunity to look again, in the light of *Whalem,* at the possibility of a *sua sponte* interposition by it of the insanity issue, despite appellant's firmly expressed desire that the issue be kept out of the case. The judge appears to us to have addressed himself directly and understandingly to the effectuation of our purpose. Despite some initial disagreement with counsel over the scope of the hearing on remand, the court made their theoretical differences academic by according counsel substantially all the latitude requested.

■ The issue for us now is the one of whether we can say that the trial court's discretion was so plainly abused as to necessitate correction by us.[3] Although *Whalem* makes clear that the court must have the last word upon whether the insanity defense is to be raised, the defendant's wishes are highly relevant; and his active opposition renders especially delicate a decision by court or counsel to override them. See, e. g., Rouse v. Cameron, 128 U.S.App. D.C. ——, 387 F.2d 241, decided September 1, 1967. We are far from being able to say that, on this record, the failure of the court to intrude the insanity defense on its own initiative was reversible error.

In *Whalem* itself this court found no abuse of the discretion it recognized to exist; and the facts there are arguably more compelling than those present here.[4] See also Trest v. United States, 122 U.S.App.D.C. 11, 350 F.2d 794 (1965). Here appellant's own expert testified that appellant was competent to choose not to use the defense; and it is worthy of remark that, in the event, appellant was acquitted of two of the four charges against him, and presented a substantial defense against the other two. At the time of the trial in October, 1964, the most serious suggestion of a mental problem was the jury verdict of the preceding April, but that was a finding that the Government had failed to prove beyond a reasonable doubt that appellant was sane in May of 1962. Since that time appellant had at least twice been found to be without current mental deficiencies.

The Government has urged that we should find an abuse of discretion in this area only where the evidence, if established at trial, would require the court

---

3. In *Whalem* (Fn. 10) we were at pains to point out that:
"No rigid standard exists to control the District Court in deciding whether it should require the insanity issue to be submitted. As a matter within the sound discretion of the District Court, this question must be resolved on a case by case basis."

4. Whalem had been civilly committed to St. Elizabeths some years before he committed the crimes in question while on convalescent leave, but he had never been found capable of complete detachment from the institution.

to direct a verdict of not guilty by reason of insanity. We need not—and we expressly do not—go so far in the formulation of a standard of review in order to conclude here that the trial court's exercise of judgment was not unacceptably arbitrary.

The judgment of conviction is

Affirmed.